E-FILED
Friday, 08 May, 2026  03:52:58 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

EDWARD C.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 1:25-cv-01140-RLH

## ORDER & OPINION

Plaintiff Edward C. ("Edward") filed this suit to challenge an administrative law judge's finding that he was not disabled under the Social Security Act and thus ineligible for benefits. The parties have consented to final disposition by a U.S. Magistrate Judge. (Doc. 7.) Because the ALJ's decision was supported by substantial evidence, the Commissioner's decision will be affirmed.

## LEGAL STANDARD

### I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

**Step One.** Is the claimant currently engaged in substantial gainful activity?

**Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?

**Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?

**RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?

**Step Four.** Based on the claimant's RFC, can they perform their past work?

**Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.  Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, while the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

**BACKGROUND**

### I.    Edward

Edward was born in 1982, (R. at 318[1]), and has received his high school diploma, (R. at 361). He was previously employed as a sanitation worker and as a barber. (R. at 70–71.) On a function report that Edward completed as part of his application process, he claimed that seizures and medication side effects make it difficult for him to sustain full-time employment. (R. at 252.) He also stated that he suffered from sciatica, asthma, and high blood pressure. (R. at 252.) Edeward spends his days caring for his five children, which includes helping them prepare for school and complete their homework. (R. at 253.)

### II.    Procedural History

Edward applied to the Social Security Administration for supplemental security income in June 2022, alleging that he has been disabled since May 1, 1993. (R. at 17.) His application was initially denied in May 2023 and denied upon reconsideration in September. (R. at 17.) He then requested a hearing before an ALJ, (R. at 17), which took place in March 2024, (R. at 31). Present at the hearing were Edward, his attorney, and a vocational expert. (R. at 31.)

After the hearing, the ALJ issued a written opinion concluding that Edward was not disabled and therefore not entitled benefits. (R. at 31.) In response, Edward sought review of the ALJ's decision with the Appeals Council, but his request was

---

[1] "R." refers to the Certified Administrative Record filed on July 7, 2025. (Doc. 5.) The page numbers cited in this R&R refer to the black page numbers at the bottom right of each page of the transcript rather than the green page numbers generated automatically by CM/ECF at the top right.

denied. (R. at 1.) Edward then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) He filed his brief three months later, (Doc. 8), the Commissioner responded, (Doc. 12), and Edward replied, (Doc. 13).

## III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Edward was disabled. At step one, he determined that Edward has not engaged "in substantial gainful activity" since June 2022—the date Edward applied for benefits. (R. at 19.) At step two, the ALJ found that Edward had the following severe impairments: (1) epilepsy; (2) degenerative disc disease of the lumbar spine; (3) obesity; (4) essential hypertension; and (5) asthma. (R. at 19.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 19–20.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Edward] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he cannot climb ladders, ropes or scaffolds; may occasionally climb ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl. He must avoid concentrated exposure to atmospheric conditions defined in the SCO1 , such as fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants, and avoid all hazards such as heavy machinery and unprotected heights and moving mechanical parts; [Edward] also would need a sit/stand option for every 20 minutes of work while remaining on task.

(R. at 20.) At step four, the ALJ found that Edward had no past relevant work. (R. at 26.) Finally, at step five, the ALJ concluded that Edward—based on his age, education, work experience, and RFC—could perform jobs that exist in significant numbers in the national economy. (R. at 26.) Examples of those jobs included

merchandise marker, mail clerk, and collator operator. (R. at 26.) Based on the ALJ's conclusion at step give, he determined that Edward is not disabled. (R. at 27.)

## DISCUSSION

Edward challenges two aspects of the ALJ's RFC assessment. First, he argues that the ALJ failed to properly evaluate whether a cane was medically necessary. But even assuming the ALJ committed error, it was harmless because Edward could still perform jobs in the national economy despite using a cane. Even so, the ALJ did not err in concluding that Edward does not require a cane: Edward failed to offer the kind of evidence necessary to establish that limitation. Second, he argues that the ALJ failed to incorporate the side effects of his medications. But the ALJ addressed Edward's allegations and properly found them unsupported by the record.

## I.    The ALJ's Discussion of Edward's Cane Use

Edward first challenges the ALJ's finding that a cane was not medically necessary. In particular, he argues that a "prescription for a cane is not necessary"; the ALJ "misrepresented" the record; and ample evidence substantiates Edward's allegations that he needs a cane to stand and walk. (*See* Pl. Br. 8–13.[2]) The Commissioner responds that Edward did not offer the kind of evidence required to find a cane is necessary; the ALJ properly assessed Edward's cane use; and any error was harmless because, even assuming Edward needs a cane, he still would not have been found disabled. (Comm'r Br. 3–6.)[3]

---

[2] "Pl. Br." refers to Edward's brief, filed on July 9, 2025. (Doc. 8.)

[3] Edward does not respond to the Commissioner's harmless-error argument in his reply brief, though the Court does not necessarily take that as a concession that the argument has merit. (*See generally* Pl. Reply, Doc. 13.)

7

Even assuming the ALJ erred in assessing Edward's cane use, it would not warrant reversal. Indeed, an error is harmless if the court can predict with confidence that the ALJ would reach the same result on remand. *Thomas H. v. Kijakazi*, No. 3:22-cv-50331, 2023 WL 6388145, at \*2 (N.D. Ill. Sept.  29, 2023). As the Commissioner observes, Edward's attorney asked the vocational expert whether the cited jobs would "still be available if a person needed to use [a] cane." (R. at 59.) The vocational expert responded in the affirmative: approximately 132,000 mail clerk jobs would be available, even assuming the employee was required to use a cane. (R. at 60.) That number is "well above the threshold for significance." *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011); *see also Milhem v. Kijakazi*, 52 F.4th 688, 698–97 (89,000 jobs was significant); *id.* at 697 (collecting cases finding 25,000 national jobs, 32,000 national jobs, and 10,000 national jobs to be "significant" within the meaning of the social security regulations). Thus, even if the Court remanded the case, and even if on remand the ALJ included a cane restriction in Edward's RFC, the ALJ's step-five conclusion would be the same: there would exist jobs in significant numbers in the national economy that Edward could perform. *See* 20 C.F.R. § 416.920(a)(4)(v).

Even if the Court were inclined to address the merits of Edward's cane argument, it would disagree. Edward suggests that the ALJ's reliance on the lack of a prescription was improper because "a prescription for a cane is not necessary." (Pl. Br. 8.) But the Seventh Circuit has said otherwise. Indeed, before an ALJ can include a cane limitation in the claimant's RFC, the claimant must adduce "medical documentation establishing the need for a hand-held assistive device to aid in

8

walking and standing, and describing the circumstances for which it is needed." SSR 96-9p. Mere references in the record to the claimant's use of a cane or antalgic gait are not enough. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). Instead, courts have required an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Id*. This standard is a demanding one. The fact that a physician provided a cane is not enough, *see Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010), nor is a doctor's statement that a claimant "uses a cane to walk," *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009).[4]

Here, the ALJ recounted Edward's allegations that he uses a cane daily. (R. at 21.) The ALJ also cited the records showing that Edward was "using a cane" to walk. (R. at 21.) Nonetheless, the ALJ concluded that "there is no evidence that it was prescribed, and examinations show he could ambulate effectively without" one. (R. at 25.) Because Edward did not adduce an "unambiguous opinion from a physician" outlining his need for a cane, the ALJ was entitled to exclude a cane limitation from Edward's RFC. *See Tripp*, 489 F. App'x at 955.

Edward's arguments do not change that conclusion. Edward faults the ALJ for "misrepresenting" an exhibit when the ALJ concluded that Edward could walk effectively without a cane. (Pl. Br. 10.) In fact, Edward argues, that exhibit

---

[4] Edward cites *Parker v. Astrue* for the proposition that a cane does not require a prescription. 597 F.3d 920, 922 (7th Cir. 2010) ("A cane does not require a prescription."). Yet that language from *Parker* was made in the context of the claimant's allegations of pane. The Court was not deciding the evidentiary standard that applies to canes generally. SSR 96-9p and the court's interpretation of it in *Tripp* answer that question directly. And regardless of whether one calls the unambiguous statement from a doctor a "prescription" or not is largely beside the point, because Edward points to no such statement in the administrative record.

demonstrated that Edward could only walk fifty feet before he must rely on an assistive device. (Pl. Br. 9.) Edward is correct that the disability report cited by the ALJ stated that Edward was "using [a] cane intermittently" and that he could "walk 50 feet without it." (R. at 323.) But this argument misses the forest for the trees. Although the records Edward cites may support the proposition that he needs a cane, (*see* Pl. Br. 11), the fundamental problem was not the *quantity* of evidence Edward offered to support his cane use—it was the *kind* of evidence.[5] The ALJ's mischaracterization of the evidence is therefore harmless: even if the ALJ read the record as Edward does, the ALJ was still prohibited from including a cane in Edward's RFC.

## II.    Side Effects of Edward's Medication

Edward next argues that the ALJ gave short shrift to his side effects—in particular, the dizziness, vomiting, and weakness he experiences as a by-product of his seizure medication. Edward challenges the ALJ's conclusion that "the medical evidence does not demonstrate any significant complaints regarding medication side effects." (Pl. Br. 14 (citing R. at 25).) Just because Edward never *complained* of side effects, he says, does not refute the allegations that he suffered from them. (Pl. Br. 14–15.) The Commissioner responds that this argument misconceives the nature of disability adjudication. (Comm'r Br. 7.) Because the only evidence of side effects was

---

[5] Edward's argument that the ALJ failed to consider his cane use in light of his obesity fails for the same reason. (*See* Pl. Br. 12–13.) Edward's obesity may indeed make it more likely that he needs a cane. But the fact remains that Edward failed to substantiate his cane use with the requisite evidence.

in the form of Edward's own testimony, the Commissioner argues, the ALJ was not required to incorporate those side effects into Edward's RFC. (Comm'r Br. 6–7.)

The Commissioner has the better argument. True, ALJs are instructed to consider, among other things, the "type, dosage, effectiveness, and *side effects* of any medication" that claimants are taking or have been prescribed. 20 C.F.R. § 404.1529(c)(3)(iv) (emphasis added). And yes, the ALJ's conclusion about a claimant's side effects (or lack thereof) must be supported by substantial evidence. But the ALJ here discharged his obligation to do so. Indeed, the ALJ recounted Edward's testimony that he "had some side effects from Keppra, including fatigue and nausea at times." (R. at 25.) The ALJ concluded, however, that "the medical evidence does not demonstrate any significant complaints regarding medication side effects." (R. at 25.) And as the Commissioner observes, the ALJ explicitly "accommodated [Edward's] seizure disorder by" prohibiting him from climbing and reducing his exposure to hazards. (Comm'r Br. 7; *see also* R. at 25 ("The undersigned has accommodated the claimant's seizure disorder, by limiting him from climbing as noted above, limited exposure to hazards.").) Accordingly, the ALJ (1) recognized Edward's testimony, (2) found no objective evidence to support it, and (3) accommodated for the symptoms that Edward experiences as a result of his seizure disorder. That conclusion was supported by substantial evidence.

Edward's other arguments are unavailing. First, he argues that "the ALJ did not address whether he credited the existence of the side-effects, and whether [Edward] would need to take naps regularly during the workday due" to those side

11

effects. (Pl. Br. 15.) Not so. The ALJ squarely addressed Edward's allegations concerning the side effects of his medication, finding them unsupported by the medical record. Edward also suggests that the lack of objective evidence is not necessarily inconsistent with side effects. (Pl. Br. 14.) Maybe so. But the fact remains that the ALJ weighed Edward's allegations against the lack of evidence in the record. Edward may disagree with how the ALJ balanced those factors, but this Court is not empowered to reweigh the evidence. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *Herr*, 912 F.2d at 181 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary.").

## CONCLUSION

IT IS THEREFORE ORDERED that the Commissioner's decision be affirmed. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 8th day of May 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

12